### ROXBURY.

At a meeting for the choice of one or more representatives, the selectmen stated that the town was entitled to four, and called on the voters to bring in votes for from one to four. A motion was made and seconded to send two and no more, and this the selectmen, as they had previously determined to do, refused to put or to permit debate upon. Great excitement followed this decision, in the midst of which a motion to adjourn was made and seconded, but the selectmen refused to put it, one of them giving as a reason for such refusal, that there were votes in the ballot boxes. Many voters left the meeting, and others refused to vote. Four persons were declared elected. It was held that the election was not free, and, therefore, void.

Where warrants, calling a meeting for the choice of representatives, were dated on the 5th of May, were delivered to constables for service, between the 5th and 9th, and were returned on the 10th, having been served by printed notifications left at the houses of the inhabitants on the 10th; and it did not appear, that the town had ever passed any vote establishing the manner in which meetings should be called, or that there was any uniform usage therein, as to the same; it was held, that the notice of the meeting in question was reasonable and sufficient.

The question, what number of representatives a town will send, cannot be determined by requiring the voters to bring in their votes for such number of representatives, not exceeding the number to which the town is entitled, as they shall respectively think proper.

THE election of Abijah Draper, Crowell Hatch, William Brewer, and Lemuel Le Baron, members returned from the town of Roxbury, was controverted by Thomas Williams and others,[1] for the following reasons alleged in their petition, namely:—

1. That the meeting for the choice of representatives in said town was not notified according to law, or the accustomed manner of warning town-meetings therein;

2. That a motion being made and seconded, in the meeting, that the town should send but two representatives, the selectmen refused to put the question or to suffer debate thereon; and

3. That the meeting was conducted with a degree of violence and disturbance, utterly inconsistent with the freedom of debate and of elections; subversive of the rights of the citizens, and of the most dangerous and fatal example.

The election was supported by a memorial of Samuel Gore,

[1] 34 J. H. 36.

and others,[1] in which they alleged that the statements in the petition were totally groundless, and that in their opinion, the selectmen conducted the said meeting in a constitutional and impartial manner.

The facts in the case are stated in the following report of the committee on elections, which was made on the tenth of June, and agreed to on the next day, by a vote of 169 to 73 :—

"A town meeting for the 'choice of one or more meet person or persons to represent that town in the general court,' was holden on Wednesday the twelfth day of May, now last past, pursuant to warrants issued by the selectmen, purporting to be dated the fifth day of the same May. These warrants were delivered to the constables from the fifth to the ninth, and were all returned on the tenth of the same month. Most of the notifications (all of which were printed) were left at the houses of the inhabitants in each parish, on Monday the tenth.

The committee further report, that notice of the meeting was very generally given in the manner aforesaid, and that it was fully attended.

By a law of the commonwealth, passed on the 23d of March, 1786, (st. 1785, c. 75, § 5,) it is enacted, that the manner of summoning the inhabitants to a town meeting shall be such as the town shall agree upon. It does not appear on the records of Roxbury, that the town has ever passed a vote, establishing the manner in which its meetings should be called; and upon investigation, there did not appear any uniform usage in said town as to the manner. It did appear, that in the greater number of instances, the inhabitants have had seven days' notice at the least; but in several instances within the last ten years, the warrants have been dated, and the notifications served, quite as late before the meeting as in the present instance.

There being neither vote nor usage in the town establishing the method of calling and warning its meetings, the committee were left to decide if reasonable notice were or were not given; and the opinion of the committee is, that in the circumstances

[1] 34 J. H. 61.

of the case, the notice was reasonable, and that the first allegation in the petition is not supported.

The committee further report, that immediately after the warrant was read, and the meeting was opened, the selectmen informed the inhabitants, that the town contained a sufficient number of polls to entitle it to send four representatives, and called on the voters to bring in their votes for from one to four; that immediately a motion was regularly made and seconded, that the 'town should send two representatives and no more;' that for several days previous to the meeting, the expense, to which the town might be subjected by sending its full number of representatives, had been a subject of conversation; and that several of those, who had a wish to lessen the number and the expense, came to the meeting with an intention of making, or causing a motion to be made, to that effect, and to support the motion by demonstrations, resulting from calculations of the saving to the town by sending two instead of four, and by arguments derived from other sources.

The committee further report, that previous to the town meeting, the selectmen met and determined they would not put any motion as to the number the town would send, and that they would not permit any debate on such motion; and this determination was not made known to the inhabitants, until the day of the election, and in the manner hereinafter set forth.

The committee also report, that as soon as the aforesaid motion was made by Mr. Ebenezer Bugbee, and seconded by others, the chairman of the selectmen said: 'that motion cannot,' or 'shall not be put.' Several asked why; when Gen. Heath rose, and, addressing the chairman, observed the motion could not be dispensed with; when he was interrupted by the selectmen, some of whom said the motion would not be put, and the chairman read to the general part of the constitution, to convince him that the selectmen had a right to regulate and govern the meeting, and then said the voters were to bring in their votes for from one to four representatives, and that the sense of the town could be taken in that method better than in

any other, and that was the way on which they had deter-
mined; and the chairman added, that they were ready and
willing to take the consequences, if they were wrong. Gen.
Heath insisted with earnestness on the right of the people to
debate the question, and objected to the method the selectmen
pointed out. He was opposed with warmth by some of the
selectmen, who denied the right to debate, and insisted on
their method, when the general desisted from any further at-
tempt to speak on that motion. He was followed by Capt.
Jonathan Dorr, who also claimed for himself, and his fellow-
citizens present, the right of debating and deciding the motion
in the usual manner; and produced a paper containing calcu-
lations to demonstrate to the town the additional, and, (as it
appeared to him,) useless expense to be incurred by sending
four representatives; when he was told by the selectmen that
his calculations were founded on the expenses of 1811, and
that 1811 had nothing to do with 1813. The selectmen and
others declared him out of order, and the chairman observed
they came there to vote, and not to debate; and repeated the
call to bring in votes for from ' one to four.' Mr. Dorr insisted
on his right to speak, with earnestness, declaring he had a
right to be heard, and he would be heard; and the selectmen
persisted in the denial, and insisted on their right of regulat-
ing and governing the meeting in the way in which they had
determined, with much warmth; when there was a cry from
the body of the hall ' out with him — down with the peace
party.' Great confusion and much hustling and crowding
took place, particularly in the centre of the hall. Sticks
were raised, whether for offence, or defence, or both, the wit-
nesses could not determine. Two men were seen having
each other by the collar, and a violent scuffle ensued between
them and others. Pending this riot, several leaped from the
windows, and many left the hall by the doors. Several retired
to remote parts of the hall to prevent being involved in the
turmoil; of these was Gen. Heath, who retired, as ' for an
asylum,' to the selectmen's box, and was by one of them as-
sisted over the railings; and took his seat ' on the right, and

in the rear,' of the selectmen. The confusion still continuing, a motion was made by David S. Greenough, Esq., for the meeting to be adjourned until the next Monday, (the 17th,) which was seconded by others, and refused to be put by the selectmen, one of them assigning as a reason, that there were votes in the ballot boxes.

The committee further report, that debate on Mr. Bugbee's motion was prevented in manner aforesaid, but that no assault or violence to the person of Capt. Dorr was offered either by the selectmen or any others; that the selectmen were very loud and frequent in their calls on the peace officers, and for order. The committee also report, that a majority of the selectmen, from the time Gen. Heath was prevented speaking in manner aforesaid, until after the motion for an adjournment was made and refused to be put, were under the influence of much passion; that one of them, in a very angry and threatening manner, shook his fist in the face of Thomas Williams, Jr., Esq.; and three of them faced to the rear, towards Gen. Heath, while he was sitting quietly, and shook their fists and hands near his face, in an angry manner, exclaiming : ' General this is your doing; this is your peace party.'

The committee further report, that at the choice of representatives by said town the last year, a motion to send two was then made, and the selectmen refused to put the question, and suggested the same method for deciding it which they did this year; and the motion and suggestion then passed without further notice.

The committee further report, that the confusion and difficulty arose from the refusal of the selectmen to put the motion of Mr. Bugbee in the usual form, and from their denying the voters the right of debate ; and that several left the meeting from fear of being personally injured; that others left it in disgust; and that several, who remained, refused to vote, being also disgusted at the proceedings, considering them unconstitutional and illegal. The selectmen, however, received ballots from those present, who chose to vote, counted them, and declared the four sitting members chosen.

21

The committee further report, that it has been decided by a former house of representatives, in effect, that the right of sending representatives is corporate, vested in towns; and the right of choosing them, that is, of designating the individual or individuals, to be the representative or representatives of a town, is personal, and vested in those qualified by the constitution to vote for representatives. The same principle is recognized and settled by the supreme judicial court, in a late decision made on a question submitted, and on which their opinion was required by a former house of representatives; so that the principle must not only be considered as settled by the practice of the house of representatives, but it is the established law of the land.

The warrant in this case was for the purpose of choosing one or more representatives; and whether the town would send one, two, three or four representatives, or not send any, might have been questions, each of which, the corporators, or the legal voters in town affairs, were to decide; and to decide after reasonable debate and fair discussion, if any such debate or discussion were offered. It does appear to the committee, that by our constitution and laws, the right of such debate and discussion cannot be denied, or the exercise of it prevented, without trampling on both.

The committee would further remark, that waiving, for the present, all consideration of the selectmen of Roxbury having refused to hear debate on the motion to send two representatives, the mode they enjoined on the voters to pursue is highly objectionable. The motion before the town was, to send two representatives, and no more. The mode ordered by the selectmen was, for the voters to bring in their ballots, having from one to four names on them, at each voter's pleasure; and this, according to the selectmen's declaration, would decide whether it was the sense of the town, to send two or four. It is obvious great embarrassment and much unfairness would be caused by this; for each voter would have to determine on the number he would send, and the person or persons he would designate, at the same time. Whereas, if the number to be

sent were first settled by the town, the choice of the individual or individuals, to be representative or representatives, could, with much more facility and fairness, be made by each qualified voter.   Besides, by pursuing the mode of the selectmen, several questions might have been decided, neither of which were before the town.

To these objections, must be added, the one arising from the circumstance, that the question, whether the town will send a representative, or how many it will send, involves, as before observed, a corporate right, which must be exercised, and the decision made by the corporation, or those qualified to vote in town affairs ; but the right of designating who the representatives shall be, is vested, as before shewn, in those qualified by the constitution to vote for representatives.   These several qualifications being very different, great injustice may follow from permitting either of the classes of qualifications to govern the other, excepting when they are blended in the same individual.

And inasmuch as it does not appear to the committee, how many representatives the town of Roxbury would have voted to send, had the question been fairly submitted to the corporators, and been permitted to have been reasonably debated and discussed ; and inasmuch as it does appear, that from the unconstitutional and illegal refusal of the selectmen of Roxbury to submit the motion to send ' two representatives and no more,' to the disposal of the qualified voters in town affairs, and from their refusal to permit debate and fair discussion of that motion, much confusion and tumult did ensue, in which a majority of the said selectmen did participate ; and inasmuch as many of the voters left the meeting from fear of personal injury, and from disgust ; and others, who remained at the meeting, refused to vote, lest they might be considered as countenancing unconstitutional and illegal proceedings : It is the opinion of the committee, that the election aforesaid was not free ; and where freedom is not, there can be no choice. And whereas, on the freedom and purity of our elections, the welfare and happiness of the people essentially depend, the

committtee are compelled to report, and do report, that the supposed election of Abijah Draper, Crowell Hatch, William Brewer, Esquires, and Dr. Lemuel Le Baron, is altogether void and of no effect, and that their seats in this house be declared vacated."

In debate upon the foregoing report, much was said about the different qualifications of those who might vote on the question whether a town should send any representatives, and how many; and of those who might vote in designating the person or persons to represent a town. But since the statute of 1813, c. 68, § 6, has abolished this distinction, if it ever existed; it has been thought proper to omit the discussion of this point. By that statute it is enacted, 'that the qualifications of voters in any town, on any question whether such town will send a representative to the general court, and on all questions involving the number of representatives such town will send, shall be the same in all respects, as are required by the constitution, to entitle a person to vote in the choice of an individual or individuals, to be representative or representatives in the general court of this commonwealth.'

The above report was opposed by Messrs. Brewer and Draper, of Roxbury, Green, of Berwick, Endicott, of Dedham, and Hall, of Williamstown; and supported by Messrs. Otis, Whitman, and Sumner, of Boston, Tillinghast, of Taunton, Crosby, of Brookfield, Reddington, of Vassalborough, and Manning, of Gloucester.

Against agreeing to the report, it was said the selectmen had a discretionary power to order the question, concerning the number of representatives the town would send, to be determined in any manner they pleased, provided the voters were not deprived of their corporate] or individual rights; that in this case the manner chosen by the selectmen was perfectly fair and correct, inasmuch as the number voted for by a majority of the electors would be the number which the majority wished should represent the town; and therefore, that the selectmen's refusing to put Mr. Bugbee's motion did not deprive the electors of an opportunity to determine how many representatives should be chosen. It was said that the mode adopted by the selectmen was the readiest which could be devised; because, if the preliminary question had been taken separately, and it had been voted to send four representatives, yet if votes had afterwards been given for two only, the town would have had only two representatives; so if the town had voted to send two representatives, and the votes had been given for four, four would have been legally chosen, as a majority voting for four could, in effect, rescind the previous vote. So that a preliminary vote on the number to be chosen could be of no service, and might lead to confusion and trouble.

It was further said, that the mode which the selectmen adopted was the least objectionable, because some of the voters might not choose to vote openly on the question of how many should be chosen, and it is the policy of the law to enable electors to act freely, and without bias from fear or favor: And as no corrupt intention was proved upon the selectmen, the town ought not to be disfranchised for their mistake, even allowing that they had mistaken the proper course, in regard to the manner of ascertaining the sense of the town as to the number of representatives to be elected.

It was also said by one of the gentlemen, whose seats were in question, that the town of Roxbury had a right to send four representatives, and that the constitution requires of every town which has the right, that it exercise that right; and that the selectmen could not take away the rights of the town, and were justifiable in their refusal to become accessary to any attempts of others to take them away.

On the other hand, it was said that the constitution is not imperative as to the choice of more than one representative, but leaves it to the discretion of the town : And even the right to choose one is a corporate right, and the duty, if it may be so called, of choosing one or more, is a corporate duty. The right is to be exercised and the duty performed by the corporation. According to the supreme judicial court, " the right of sending representatives is corporate, vested in the town : and the right of choosing them is personal vested in the legal voters ; because the right of sending a representative is corporate, if the town by a legal corporate act vote not to send a representative, none can be legally chosen by a minority dissenting from that vote.' [1] It was said to follow of necessity from this opinion, that if the town of Roxbury had voted to send only two representatives, four could not have been afterwards elected, unless the vote had been formally reconsidered. This, it was said, was a complete answer to the suggestion, that the preliminary vote would be rescinded by the ballots being given for more than the town had voted to choose, and also showed that the selectmen, if they refused to put Mr. Bugbee's motion, for the reason suggested by the member returned from Roxbury, acted under an entirely false and erroneous impression. The corporation alone was competent to decide whether to exercise its corporate right at all, and how to exercise it.

This doctrine, it was said, was further confirmed by a statute passed April 20th, 1781, (statute 1780, c. 26,) and now repealed, which required the selectmen to call meetings in the month of May, for the purpose of choosing one or more representatives, agreeably to the constitution, and also by the phraseology of the statute of 1795, c. 55, now in force ; by which it was enacted, ' that the inhabitants of every corporate town, having a right to choose a representative or representatives in the legislature of this commonwealth, shall be convened for that purpose,' &c.

It was asked, who is to determine the number to be sent ? Neither the constitution nor the law has given this power to the selectmen. It must, therefore, reside in the corporation, and be exercised by the corporation.

In answer to the argument, that the number voted for, by the majority voting, would be the number which the town chose to send, and that the votes would determine the question ; it was said, that besides the embarrassment, unfairness, and confusion, pointed out by the committee, in the report, it was evident, that it never could be ascertained, that the town, after a full hearing and discussion of Mr. Bugbee's motion, would have determined, in any manner, to have sent four representatives ; and above all, it was demonstrable, that the method adopted and enforced, by the selectmen, was fallacious. Suppose 300 electors give in their ballots ; 100 vote for A, B, C, and D ; 100 vote for A and B ; and 100 vote for C and D. According to the selectmen's notion, two-thirds of the voters would be in favor of sending but two representatives, and yet each of the candidates voted for would have two-thirds of the votes, and there would be no possible way, in which the selectmen could legally refuse to return the whole number to the general court.

So if three-fifths, or any greater proportion of the voters, had wished not to send any representative, the method pursued by the selectmen would have enabled the smallest minority to make the choice, unless the electors present, instead of those who vote, should be taken into calculation ; in which case, might be seen the awkward and farcical exhibition (for example) of two hundred and ninety-nine members of a corporation, which contained six hundred electors, voting for three representatives, and the presiding officers, thereupon gravely determining that it was the vote of the town not to send any representative.

[1] 7 Mass. Rep. 526 ; ante, 120.

But allowing, for argument's sake, that the plan adopted by the selectmen would have led to a correct result, still it was urged, that their refusing to put a motion, which was proper in itself, and made at a proper time, and in a proper manner, was such an arbitrary, illegal, and unconstitutional act, as would vitiate all the subsequent proceedings which were connected with it; that it was an example, which it was the sacred duty of the legislature to discountenance and condemn; that it rather befitted the conclave of a Spanish inquisition, or the 'dumb legislation' of a celebrated assembly in France, than the legally appointed meetings of the citizens of a free republic.